**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x

In re:                                                                                 :
                                                                                            :
          DEWEY & LEBOEUF LLP, *et al.*,                        :
                                                                                            :
                                                                                            :
                                                              Debtor.          :
----------------------------------------------------------------x

ALAN M. JACOBS, as Liquidating Trustee of                :
the Dewey & LeBoeuf Liquidation Trust,                      :
                                                                                            :
                                                         Plaintiff,            :
                                                                                            :
                                                                                            :
                              v.                                                          :
                                                                                            :
JOCHEN TERPITZ,                                                        :
                                                                                            :
                                                        Defendant.         :
----------------------------------------------------------------x

**FOR PUBLICATION**

Chapter 11
Case No. 12-12321 (MG)

Adv. Proc. No. 14-01991 (MG)

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S**
**MOTION TO DISMISS**

*A P P E A R A N C E S :*

DIAMOND McCARTHY LLP
*Attorneys for Alan M. Jacobs, Liquidating Trustee*
*for the Dewey & LeBoeuf Liquidation Trust*
620 Eighth Avenue, 39th Floor
New York, New York 10018
By:      Allan B. Diamond, Esq.
           Howard D. Ressler, Esq.

909 Fannin Street, 15th Floor
Houston, Texas 77010
By:      Mark Jay Krum, Esq.
           Christopher R. Murray, Esq. (*pro hac vice*)
           Daniel Meyler, Esq.

JONES & ASSOCIATES
*Attorneys for Jochen Terpitz*
One Rockefeller Plaza, 10th Floor
New York, New York 10020
By:      Roland Gary Jones, Esq.

LAW OFFICES OF ADRIENNE WOODS, P.C.
*Attorneys for Jochen Terpitz*
One Penn Plaza, Suite 6153
New York, New York
By:    Adrienne Woods, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is Jochen Terpitz's ("Terpitz") motion to dismiss (the "Motion," ECF

Doc. # 13-2)[1] the Complaint (the "Complaint," ECF Doc. # 1) filed by Alan M. Jacobs, as the

Liquidating Trustee for the Dewey & LeBoeuf Liquidation Trust (the "Trustee").[2]  Terpitz

argues that the Complaint must be dismissed for lack of personal jurisdiction and, alternatively,

based on forum non conveniens asserting Germany as the adequate alternative forum.  The

Trustee filed an opposition to the Motion (the "Opposition," ECF Doc. # 15),[3] and Terpitz filed a

reply (the "Reply," ECF Doc. # 17).  The Court heard argument on December 11, 2014.

Terpitz was a partner in Dewey & LeBoeuf LLP (the "Debtor" or "Dewey"), a limited

liability partnership ("LLP") registered under the laws of the state of New York.  From the time

he became a partner in 2011 until he left the firm in 2012, he was a resident of Germany and

worked solely in Dewey's Frankfurt, Germany office only for European clients.  The Trustee

filed this adversary proceeding against Terpitz to claw back distributions Dewey made to Terpitz

and tax payments made on his behalf pursuant to the firm's partnership agreement, both on

account of Terpitz's status as an equity partner in the firm.  The challenged transfers allegedly

originated in New York and were made when Dewey was insolvent prior to filing for

bankruptcy.

---

[1]    Unless indicated otherwise, all references to "ECF Doc. # __" are to documents filed on the docket of Adv. Proc. No. 14-01991.
[2]    The Motion is supported by the declaration of Jochen Terpitz (the "Terpitz Decl.," ECF Doc. # 13-3).
[3]    The Opposition is supported by the declaration of Joanne Valentine (the "Valentine Decl.," ECF Doc. 15-1), an employee of the Dewey & LeBoeuf Liquidation Trust.

As explained below, the Court concludes that it has specific jurisdiction over Terpitz and this Court is the more appropriate forum to adjudicate this case. The Motion is therefore **DENIED** in its entirety.

## I.    BACKGROUND

### A.    The Debtor:  Dewey & LeBoeuf LLP

Before its bankruptcy filing on May 29, 2012 (the "Petition Date"), Dewey was a prestigious New York City-based law firm that traced its roots to the 2007 merger of Dewey Ballantine LLP and LeBoeuf, Lamb, Green & MacCrae LLP. (Compl. ¶¶ 10, 13–14.) Dewey was a registered LLP under the New York Partnership Law and was governed by the Dewey & LeBoeuf LLP Partnership Agreement (the "DLPA"), effective as of October 1, 2007, and amended twice. (*Id.* ¶¶ 11–12.) At its peak, more than 1,300 lawyers worked at the firm in numerous domestic and foreign offices. Hundreds of these lawyers—partners and associates alike—fled shortly before the firm collapsed.

On February 27, 2013, the Court confirmed the Debtor's second amended chapter 11 plan of liquidation (the "Confirmed Plan"). (*See* Chapter 11 Case No. 12-12321, ECF Doc. # 1144.) Pursuant to the Confirmed Plan, Alan M. Jacobs was appointed as the Trustee. Since his appointment, he has brought adversary proceedings against former partners and employees of the Debtor in an effort to claw back transfers made by Dewey while it was insolvent prior to the bankruptcy filing. This is one of those actions.

### B.    Partnership Compensation

Pursuant to the DLPA, Dewey's Compensation Committee allocated shares of the firm's net profits among the firm's equity partners. (*Id.* ¶ 15.) The firm used participation targets to project a partner's profits if Dewey achieved its projected net income, or to allocate profits to the

partner if the firm failed to meet projections.  (*Id.* ¶¶ 15–17.)  The Complaint alleges that in early

2008, Dewey adopted participation targets that would require the Debtor to "immediately

perform at a higher level from a fiscal standpoint."  (*Id.* ¶¶ 18–19.)  The Complaint further

submits that Dewey hired new lateral partners who were given high participation targets that "did

not reflect the firm's economic reality . . . ."  (*Id.* ¶ 20.)  As a result of Dewey's consistent failure

to meet its projected income, the equity partners did not reach their participation targets from

2008 through the Petition Date.  (*Id.* ¶ 21.)

In 2008, the firm missed its projections by approximately $140 million.  (*Id.* ¶ 26.)

Given this failure, in early 2009, Dewey proposed participation targets for 2009 that included

bonuses based on the 2008 shortfall.  (*Id.* ¶ 27.)  After the firm fell short of projections in 2009

and 2010, Dewey proposed make-up bonuses in 2010 and 2011 as well.  (*Id.* ¶ 28.)  Despite its

intentions, Dewey was never able to make up for its previous compensation shortfalls, even with

the bonuses.  (*Id.* ¶ 29.)

### C.    Terpitz's Relationship with Dewey

The Complaint alleges that Terpitz was and held himself out to be a partner and equity

interest holder of Dewey from at least February 16, 2011.  (*Id.* ¶¶ 9, 38–39.)  The Complaint

further alleges that under the DLPA, Terpitz was required to make certain capital contributions

to Dewey as a partner.  (*Id.* ¶ 40.)  The Complaint also alleges that:

> Upon information and belief, Defendant is a resident of Germany.
> Defendant is an individual who may be served with process by any
> manner of service authorized by Rule 7004 of the Federal Rules of
> Bankruptcy Procedure.

(*Id.* ¶ 9.)

By way of declaration, the Trustee provides evidence establishing that:  (1) Terpitz was

hired by Dewey, a New York LLP, as a partner in the firm's Frankfurt, Germany office, via

Dewey's Chairman, Steven Davis, who was based in New York (Valentine Decl. Ex. A); (2)

Terpitz's compensation was set by individuals in Dewey's New York office (*id*.); (3) Terpitz

corresponded with David Rodriguez of the New York office regarding tax and capital

contribution obligations Terpitz owed to Dewey on account of his partnership interest in the firm

(*id*. Exs. B–C); (4) Terpitz worked and corresponded with partners in the New York office in

relation to Dewey's energy practice (*id*. Exs. D–E.); and (5) Terpitz corresponded and worked

with partners in the New York office to manage Dewey's "Global Renewables" practice,

including by suggesting and setting billing rates for the practice and seeking to hire new

associates (*id*. Exs. F–H).

In his declaration, Terpitz alleges that on February 10, 2011, Philipp von Ilberg, a

representative of Dewey's Frankfurt branch, gave him a letter signed by Davis, inviting him to

join the Frankfurt office (the "Offer Letter").  (Terpitz Decl. ¶ 3 (citing Ex. A).)[4]  Terpitz

executed and returned the letter to Mr. von Ilberg in Frankfurt and began working in Dewey's

Frankfurt office on or about May 13, 2011.  (*Id*.)  Terpitz alleges that he severed his involvement

with Dewey on May 15, 2012 and at all relevant times, his principal place of work was Dewey's

Frankfurt office and none of the cases and projects in which he participated were for any of the

Debtor's United States ("U.S.") based clients.  (*Id*. ¶¶ 9–10.)  Terpitz further alleges that he does

not solicit business in the U.S., does not have any bank accounts in the U.S., and does not lease

or own any real property in the U.S.  (*Id*. ¶ 11.)  Terpitz provides copies of two tax-related

documents:  (1) an "Election to Participate in Group Nonresident State Tax Returns New

Elections for 2011" in which Terpitz indicated that he was a resident of Germany, not of any

state in the U.S. where Dewey had an office (*id*. Ex. B); and (2) an Internal Revenue Service

---

[4]        The Offer Letter submitted as Exhibit A to the Terpitz Declaration is the same document that the Trustee
submitted as Exhibit A to the Valentine Declaration.  (*Compare* Terpitz Decl. Ex. A, *with* Valentine Decl. Ex. A.)

Form 8805, which was filed by Dewey on Terpitz's behalf stating that he is a foreign partner with a German address (*id*. Ex. C).

### D.      The Challenged Payments from Dewey to Terpitz

The Trustee seeks to claw back cash distributions Dewey made to or for the benefit of Terpitz in the amount of $193,106.00 in 2011 and $131,860.00 in 2012.  (*Id*. ¶¶ 41–42.)  Under the DLPA, Dewey also paid at least $78,969 in personal income tax obligations on behalf of Terpitz that the Trustee seeks to recover.  (*Id*. ¶¶ 43–44.)  As a New York LLP, Dewey was a pass through entity for tax purposes.  (*Id*. ¶ 43.)  As such, individual partners, such as Terpitz, were obligated to pay taxes based on their allocated share of Dewey's income.  (*Id*.)  Dewey made certain tax payments on behalf of its partners with the expectation of reimbursement, but Terpitz has not reimbursed Dewey for such payments as of yet.  (*Id*.)

In total, the Trustee seeks judgment against Terpitz in the amount of not less than $403,936 plus interest, fees, and costs.  (*Id*. ¶ 3.)  The Complaint alleges that Dewey made these transfers from its headquarters in New York.  (*Id*. ¶ 5.)

Terpitz alleges "on information and belief" that he received payments from Dewey's German branch, from accounts maintained by Dewey's Frankfurt office in the German banks HSBC Tinkaus & Burkhardt AG and Commerzbank AG.  (Terpitz Decl. ¶ 7.)  Terpitz further alleges "on information and belief" that the German bank accounts were funded by payments from clients of Dewey's German office and did not form part of Dewey's cash management system in the U.S.  (*Id*. ¶ 8.)

### E.      The Motion

Terpitz's Motion to dismiss is based on two grounds.  First, Terpitz argues that the Court does not have personal jurisdiction over him.  (Motion at 3–9.)  Terpitz asserts that to resolve

questions of personal jurisdiction, "a district court [] must conduct a two-part inquiry . . . [f]irst, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." (*Id*. at 4 (quoting *China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc.*, 882 F. Supp. 2d 579, 598 (S.D.N.Y. 2012) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (alteration and internal quotation marks omitted); *accord Savin v. Rainer*, 898 F.2d 304, 306 (2d Cir. 1990))).)  Terpitz then addresses these two prongs in turn.  Terpitz argues that New York Civil Practice Law and Rules ("CPLR") sections 301 and 302 control and the Trustee has not alleged any factual bases for jurisdiction under either provision.  (*Id*. at 4–7.)  Terpitz then asserts that the Trustee fails to establish that Terpitz has sufficient "minimum contacts" with the U.S. to permit this Court to exercise jurisdiction over him under federal standards.  (*Id*. at 7–9.)  According to Terpitz, he did not "purposefully avail" himself to the laws of the forum state by way of executing the Offer Letter or receiving funds from Dewey.  (*Id*. at 8.)  Terpitz further contends that there is no "conduct [alleged that can be construed as] purposefully directed at" the U.S. because Terpitz only worked in Germany for European clients.  (*Id*.)  Terpitz asserts that the receipt of funds from Dewey is insufficient on its own because those funds were paid from German bank accounts maintained by Dewey's Frankfurt office, not the New York office.  (*Id*. at 9.)

Second, Terpitz argues that the doctrine of forum non conveniens calls for the dismissal of the Complaint in favor of litigation in Germany, the proffered alternative forum.  (*Id*. at 9–17.)  Terpitz asserts that the balance of public and private interest factors considered in a forum non conveniens analysis weigh heavily in favor of dismissing the current action.  (*Id*. at 11–17.)

7

In terms of private interests, Terpitz argues that: (1) access to proof would be costly and cumbersome in New York because evidence (a) concerning the challenged payments to Terpitz needs to be obtained from German banks and (b) concerning the work that Terpitz performed for the benefit of Dewey "may have to be obtained from German and other European companies" beyond the subpoena power of this Court (*id.* at 12); (2) trial of this action in New York would potentially require the testimony of foreign witnesses to prove his defenses, who cannot be compelled to testify by this Court (*id.* at 12–13); and (3) the cost of bringing witnesses from Europe to New York is prohibitive (*id.* at 13). Terpitz further asserts that any judgment by this Court or any other U.S. court would not be recognizable and enforceable in Germany pursuant to section 328 paragraph 1 number 1 of the German Code of Civil Procedure, or *Zivilprozessordnung* ("ZPO"), since Terpitz does not have property located in New York. (*Id.* at 14–15 (citing Wolfgang Wurmnest, *Recognition and Enforcement of U.S. Money Judgments in Germany*, 23 BERKELEY J. INT'L LAW 175, 189 (2005); *Airflow Catalyst Sys., Inc. v. Huss Techs. GMBH*, No. 11-CV-6012, 2011 WL 5326535, at *7 n.12 (W.D.N.Y. Nov. 3, 2011)).)

As for public interests, Terpitz asserts that: (1) there are several administrative difficulties that favor trial in Germany, such as (a) New York being "thousands of miles away from" potential evidence located in Germany and European witnesses who would need to be convinced, but could not be compelled, to fly to New York to testify (*id.* at 13–14); (b) the enforcement of a New York judgment against Terpitz requiring the Trustee to commence a recognition and enforcement action in Germany that Terpitz submits he will adamantly oppose (*id.* at 14–15); (c) any judgment of this Court not being enforceable in Germany (*id.* at 15); and (d) the potential submission to the process of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters to enforce any necessary subpoenas if any foreign third-

parties refuse to produce evidence (*id.* at 15–16); (2) court congestion in New York weighs in favor of trial in Germany (*id.* at 14–15); and (3) the core fraudulent conveyance allegation in the Complaint sounds in breach of contract or unjust enrichment, and presents damages claims that have been dismissed by courts on forum non conveniens grounds where the alternative forum is abroad (*id.* at 16–17). Terpitz further asserts that he believes the Trustee has previously instructed German counsel to collect money from debtors of the Frankfurt branch and to represent the Debtor in the secondary insolvency proceedings before the local court of Frankfurt am Main. (*Id.* at 16.) Thus, requiring the Trustee to present this case before the German courts would not present any additional burden. (*Id.*)

### F.    The Opposition

The Trustee argues that the Court has specific jurisdiction over Terpitz, similar to the specific jurisdiction the Court held it could exercise over defendant Scott Brodsky; Brodsky's motion to dismiss a separate adversary proceeding for lack of personal jurisdiction was denied. (*Id.* at 3–5.) *See also* Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, *Jacobs v. Brodsky (In re Dewey & LeBoeuf)*, Adv. Proc. No. 14-01985 (MG) (Bankr. S.D.N.Y. Oct. 29, 2014), ECF Doc. # 21. The Trustee asserts that the underlying causes of action arise out of Terpitz's position as a partner of Dewey, a New York LLP, evincing purposely directed activities at the U.S. (*Id.*) The Trustee recites the contacts between Terpitz and the U.S., namely New York, documented by evidence, asserting that there are certainly "minimum contacts" sufficient to justify the exercise of this Court's jurisdiction. (*Id.* at 4–5.) The Trustee then argues that the exercise of personal jurisdiction over Terpitz is "reasonable" because Terpitz knowingly accepted a position as a partner in a New York LLP, making it foreseeable that he could be haled into a New York court. (*Id.* at 5.)

The Trustee also refutes Terpitz's forum non conveniens argument, asserting that dismissal is not warranted in this case.  (*Id*. at 5–8.)  The Trustee argues that as a domestic plaintiff, the Trustee's choice of forum should be afforded great deference.  (*Id*. at 5.)  According to the Trustee, the plaintiff's choice of forum should be upset only if the defendant can demonstrate:  "(1) that an adequate alternative forum exists; and (2) that, considering relevant private and public interest factors, the balance of convenience tips *strongly* in favor of trial in the alternative forum."  (*Id*. at 5–6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)) (emphasis added).)  The Trustee does not dispute that Germany is an "adequate alternative forum."  (*Id.* at 6.)  The Trustee does dispute, however, Terpitz's argument that the private and public interest factors weigh in favor of trying the case in Germany.  (*Id*. at 6.)

In terms of private interests, the Trustee argues that:  (1) access to proof in the New York forum is more convenient than in Germany because nearly all documents and key witnesses relating to Terpitz's status as a partner of Dewey are in the Trust's possession and are located in the U.S. (*id.* at 7); (2) there is pending related litigation, namely the Dewey bankruptcy and other claw back adversary proceedings, in this Court that are "relevant with respect to access to sources of proof" (*id.* (quoting *Rahl v. Bande*, 328 B.R. 387, 406 (S.D.N.Y. 2005))); (3) the key issue of insolvency in this case is the same remaining controlling issue in the other pending adversary proceedings and will be decided based on expert testimony, the costs (and other discovery-related costs) of which Terpitz has the opportunity to split with other claw back defendants only if the case remains in New York (*id.*); and (4) the cost to Terpitz for air travel to New York should be given minimal weight (*id.* (citing *Rahl*, 328 B.R. at 407)).  The Trustee also argues that the enforceability of a U.S. judgment in German courts is unclear, but this factor alone does not warrant dismissal.  (*Id.* at 7–8 n.4 (citing *Great N. Ins. Co. v. Constab Polymer-*

10

*Chemie GmbH & Co.*, No. 5:01-CV-0882, 2007 WL 2891981, at *13 (N.D.N.Y. Sept. 28, 2007))..)

As for public interests, the Trustee argues that: (1) this Court has the resources to adjudicate complex litigation (*id.* at 8 (citing *Rahl*, 328 B.R. at 408)); (2) this case is centered in New York because Dewey was a New York LLP, the firm was managed in New York, and the firm's bankruptcy is being adjudicated in New York (*id.*); (3) U.S. bankruptcy law, Second Circuit precedent, and New York law are the applicable laws in this case, not German law (*id.*); and (4) the last two public interest factors are inapplicable because there are no conflict of laws issues in this case and Terpitz has not requested a jury trial (*id.*).

### G.    The Reply

Terpitz reaffirms his personal jurisdiction argument first by asserting that the Trustee's reliance on the Court's prior decision in *Brodsky* is misplaced because it is distinguishable. (Reply at 1–5). According to Terpitz, the *Brodsky* case is inapposite because: (1) Terpitz had no authority to hire or fire associates and was subordinate to the actions of the "local policy committee" (*id.* at 2–3); (2) Terpitz's compensation was not dependent on his foreign office's income (*id.* at 3–4); and (3) Terpitz did not render any work to any of Dewey's U.S. clients (*id.* at 4–5). Terpitz then asserts that his contacts with Dewey are insufficient to fulfill the "minimum contacts" requirement for this Court's exercise of jurisdiction over him. (*Id.* at 5–8.) Terpitz argues that the contacts between Dewey and Terpitz were created by Dewey and are therefore insufficient to establish personal jurisdiction—contacts must be those that the defendant initiates. (*Id.* at 6–7.) Terpitz further argues that the Trustee's evidence is insufficient to show the presence of other contacts between Terpitz and the U.S. apart from Dewey. (*Id.* at 7–8.) According to Terpitz, each of the emails the Trustee provided, despite being between

Terpitz and New York-based partners, did not discuss U.S. projects or relate to U.S. clients.  (*Id.* at 5 n.7–10.)

Finally, Terpitz argues in the alternative that limited jurisdictional discovery may be appropriate in this case to resolve the question of whether sufficient contacts exist between Terpitz and the U.S. for this Court to exercise personal jurisdiction.  (*Id.* at 9–10.)  Terpitz does not address his forum non conveniens argument in his Reply.

## II.    DISCUSSION

### A.    Personal Jurisdiction

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of making a prima facie showing "through its own affidavits and supporting materials" that personal jurisdiction exists.  *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 418 B.R. 75, 79 (Bankr. S.D.N.Y. 2009) (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Robertson Ceco Corp.*, 84 F.3d at 566 ("[T]he plaintiff bears the burden of showing that the court has jurisdiction over the defendant."). When the issue of personal jurisdiction is addressed, as it is here, on affidavits or declarations, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."  *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985); *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196–98 (2d Cir. 1990) (discussing procedure for challenging personal jurisdiction)).

If a foreign defendant has not consented to jurisdiction by filing a proof of claim in the bankruptcy case, the plaintiff must demonstrate that "the foreign defendant has the requisite

minimum contacts with the U.S. at large" to satisfy the due process clause of the Fifth

Amendment.[5] *Picard*, 418 B.R. at 79–80 (internal quotation marks and citations omitted).  The

court must also determine whether exercising personal jurisdiction over the foreign defendant

would be "reasonable" such that it would not offend "traditional notions of fair play and

substantial justice." *Asahi Metal Indus. Co., Ltd. v. Super. Ct. Cal., Solano Cnty.*, 480 U.S. 102,

113 (1987); *Robertson-Ceco Corp.*, 84 F.3d at 568.

Two theories support a court exercising personal jurisdiction—general jurisdiction or

specific jurisdiction.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754–56 (2014); *Waldman v.

Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014).  Here, the Trustee only seeks to base personal

jurisdiction on specific jurisdiction so that is the only basis for personal jurisdiction addressed by

the Court.

The Supreme Court in *Waldman* recently addressed the standards for exercising specific

jurisdiction.  The Court explained the applicable principles as follows:

> This case addresses the minimum contacts necessary to
> create specific jurisdiction.  The inquiry whether a forum State
> may assert specific jurisdiction over a nonresident defendant
> focuses on the relationship among the defendant, the forum, and
> the litigation.  For a State to exercise jurisdiction consistent with
> due process, the defendant's suit-related conduct must create a
> substantial connection with the forum State.  Two related aspects
> of this necessary relationship are relevant in this case.
>
> First, the relationship must arise out of contacts that the
> defendant himself creates with the forum State.  Due process limits
> on the State's adjudicative authority principally protect the liberty
> of the nonresident defendant—not the convenience of plaintiffs or

---

[5]       Terpitz's initial focus on New York's long-arm statute and the CPLR is misplaced.  "Personal jurisdiction
is based on Bankruptcy Rule 7004(a), which applies to all core and non-core cases in bankruptcy court, even if
reference is withdrawn, because jurisdiction is derived from the Bankruptcy Code and not as a result of diversity of
jurisdiction or some non-bankruptcy federal source." *J.T. Moran Fin. Corp. v. Am. Consol. Fin. Corp. (In re J.T.
Moran Fin. Corp.)*, 124 B.R. 931, 944 (S.D.N.Y. 1991) ("[T]he district court need not reexamine the basis for
personal jurisdiction over the defendants in the context of the long-arm provisions expressed in New York C.P.L.R.
§ 302(a)(1).").

third parties.  We have consistently rejected attempts to satisfy the defendant-focused minimum contacts inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.

. . . .

Second, our minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.  Accordingly, we have upheld the assertion of jurisdiction over defendants who have purposefully reach[ed] out beyond their State and into another by, for example, entering a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State . . . .  And although physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.

But the plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.  To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties.  But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.  Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State.

*Waldman*, 134 S. Ct. at 1122–23 (internal quotation marks and citations omitted).

The Complaint and the evidence submitted by the Trustee in opposition to the Motion, which should be accepted as true for purposes of the Motion, establish a prima facie basis for the Court to exercise specific jurisdiction over Terpitz at this stage of the case.  The Complaint alleges that Terpitz became a partner of Dewey, a New York LLP, by signing the Offer Letter issued by Dewey's New York office (Compl. ¶¶ 5, 9, 38–39), Terpitz was required to make certain capital contributions to Dewey pursuant to the DLPA (*id.* ¶ 40), Dewey paid distributions to Terpitz and made certain tax payments for Terpitz on account of his partnership interest (*id.*

14

¶¶ 41–44), and the payments to Terpitz were made by Dewey from its headquarters in New York

(*id.* ¶ 5).

The Trustee, as well as Terpitz, submitted the Offer Letter as evidence supporting their

respective arguments.  (*See* Valentine Decl. Ex. A; Terpitz Decl. Ex. A.)  The Offer Letter states

in pertinent part:

> We are pleased to offer you the opportunity to join Dewey
> & LeBoeuf LLP (the "Firm") as a partner in our Corporate
> Department resident in the Frankfurt office. . . . Your admission as
> partner shall be governed by the terms set forth in the Firm's
> Partnership Agreement dated October 1, 2007, as amended, April
> 12, 2010 (the "Agreement"). . . .
>
> Your initial Participation Target shall be at the annual rate
> of 400,000 for 2011, assuming that you fulfill the normal
> expectation of a partner by devoting your full time and attention to
> the practice of law and partnership activities for the Firm.  Your
> Participation Target is divided into two components:  (i) a draw
> paid monthly at a rate of 240,000 annually; and (ii) an excess
> target over draw ("Distribution(s)") payable from time to time as
> warranted by the Firm's cash flow.  Your Participation Target for
> 2011 shall be prorated based upon the actual number of days from
> your Start Date through December 31, 2011.
>
> Your 2012 Participation Target shall be established based
> upon your contributions to the Firm and its clients as determined
> by the Firm's Executive Committee.
>
> As a partner in the Firm, your compensation may be subject
> to tax in any jurisdiction in which the Firm maintains an office,
> depending upon your individual circumstances. . . .
>
> As a partner you will be required to contribute capital to the
> Firm (the "Capital Contribution"). . . . At your election, you may
> pay the Firm directly, have it deducted proportionately from your
> draws and distributions over the course of the year in which you
> join the Firm, or utilize the optional loan program the Firm has
> negotiated. . . . If you are interested in exploring the loan program,
> please contact David Rodriguez [the Firm's Partner Relations
> Specialist].

(Valentine Decl. Ex. A; Terpitz Decl. Ex. A.)  At the bottom of the letterhead of the Offer Letter,

it states that "Dewey & LeBoeuf LLP is a New York Limited Liability Partnership."  (*Id.*)

Terpitz does not dispute, and his counsel conceded, that Terpitz was a partner in Dewey,

the New York LLP.  (Dec. 11, 2014 Hrg. Tr. 15:3–17, ECF Doc. # 18.)  Rather, Terpitz disputes

the extent of his partner status, asserting that he had an individualized compensation agreement

with Dewey, much like an annual salary and unlike a typical partner's share in the partnership's

profits.  (*Id.* 21:8–24:14.)  Terpitz's counsel provided the Offer Letter in support of this argument

at the hearing, opining that the terms regarding participation targets for 2011 and 2012 in the

Offer Letter were individualized.  (*See id.*)  The Court disagrees.  The actual language of the

Offer Letter in conjunction with the allegations in the Complaint regarding partner compensation

under the DLPA completely undermines this assertion.  (*See* Compl. ¶¶ 15–21.)  The Offer

Letter clearly establishes that Terpitz was a partner in the New York LLP, submitted to the

partnership's governing document—the DLPA—and was compensated as a partner through a

share of the profits with a set participation target, not through an annual salary.  (Terpitz Decl.

Ex. A; Valentine Decl. Ex. A.)  By executing that Offer Letter, Terpitz agreed to become a

partner in the New York LLP and in turn agreed to submit to the laws of New York, which

govern the DLPA.  (Terpitz Decl. Ex. A; *see* Comp. ¶¶ 10–12.)  *See also Rahl*, 328 B.R. at 401

("It is well-settled that where a choice of law provision is expressly set forth in an agreement, it

is presumed to be the parties' intent, and New York courts will enforce it.").  This submission

coupled with Terpitz's correspondence with Rodriguez, specifically relating to Terpitz's

compensation and tax withholdings (*id.* Exs. A–C)—the payment of which from 2011 through

2012 is specifically at issue in this case (*see* Compl. ¶¶ 41–44)—establish that Terpitz knew, or

should have had reason to know, that such correspondence and resulting payments could confer

personal jurisdiction over him in New York, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (concluding that specific personal jurisdiction exists where a foreign defendant "purposefully direct[s] his activities at residents of the forum," and the underlying cause of action "arise[s] out of or relate[s] to those activities").

Terpitz fails to rebut this knowledge and instead focuses on his contacts with and the challenged payments' connection to Germany. First, Terpitz emphasizes that he is a resident of Germany who only worked in Dewey's Frankfurt office for European clients. (Terpitz Decl. ¶¶ 2–6, 10–11.) Terpitz also submits tax forms that state he is a German resident and worked in Dewey's Frankfurt office. (Terpitz Decl. Exs. B–C.) The Trustee does not dispute these facts and does not need to—these allegations and documentary evidence do not speak to the Trustee's allegations and evidence establishing specific jurisdiction, let alone provide a "controverting presentation." *A.I. Trade Fin., Inc.*, 989 F.2d at 79–80 (concluding that questions of fact or "doubts are to be resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party") (citations omitted).

Second, Terpitz testifies that "on information and belief" the payments challenged in the Complaint were made from Dewey's German bank accounts to his personal German bank accounts and did not pass through New York. (Terpitz Decl. ¶ 7.) Terpitz does not provide any evidence in support of this allegation and the Trustee correspondingly does not provide documentary evidence proving that the transfers were made from Dewey's New York bank accounts. The Complaint alleges, however, that the payments were made from Dewey's headquarters in New York. (Compl. ¶ 5.) At the hearing, the Trustee also represented that the transfers, though they did pass through German bank accounts, originated in and were wired from Dewey's New York bank accounts. (Dec. 11, 2014 Hrg. Tr. 26:19–27:2 ("[T]he money

17

that went to the Frankfurt office was wired from New York.  The amounts that partners in Frankfurt were paid were controlled by the debtor's accounting staff and the debtor's finance staff in New York.  [Terpitz's] money came locally from a local German bank, but in that bank, it came from New York.").)  Given that the allegations in the Complaint are to be taken as true and "doubts are to be resolved in the plaintiff's favor," *see A.I. Trade Fin., Inc.*, 989 F.2d at 79–80, the Trustee plausibly establishes at this stage of the case that the challenged payments have at least some connection to New York.

The fraudulent transfer claims asserted against Terpitz, alleging that he was an equity partner in the New York LLP, seeking to recover transfers and payments of tax withholdings that he allegedly received while Dewey was insolvent, specifically relate to Terpitz's alleged forum-related conduct, i.e., his execution of a New York LLP's partnership agreement governed by New York law, acceptance of a position as an equity partner in that LLP, and receipt of transfers derived from that LLP's New York office.  It is Terpitz's alleged conduct that forms the connection with the forum and satisfies the requirements for the exercise of specific jurisdiction. *See Waldman*, 134 S. Ct. at 1123 ("[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.").

The Court concludes that the exercise of personal jurisdiction over Terpitz in this fraudulent transfer action is "reasonable."  *Picard*, 418 B.R. at 81–82 (finding personal jurisdiction over foreign defendant was reasonable because the U.S. has a "strong interest" in a fraudulent transfer action under the Bankruptcy Code).

The Motion to dismiss for lack of personal jurisdiction is therefore **DENIED**.

18

### B.    Forum Non Conveniens

Terpitz also moves to dismiss the Complaint on grounds of forum non conveniens, asserting that Germany is the more appropriate forum.  (Motion at 9–17.)  The doctrine of forum non conveniens "is a discretionary device permitting a court in rare instances to 'dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim.'"  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000) (citation omitted).  The Second Circuit has articulated a two-step process for evaluating a motion to dismiss on these grounds:  the court must first determine whether an adequate alternative forum exists, and if so, the court must then balance a series of private and public interest factors set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).  *Wiwa*, 226 F.3d at 100.  The defendant bears the burden of establishing both that an adequate forum exists and that "the pertinent factors 'tilt[] strongly in favor of trial in the foreign forum.'"  *Id.* (citation omitted).  The Court may consider pleadings, affidavits, and exhibits in making its determination.  *Airflow Catalyst Sys.*, 2011 WL 5326535, at *1 n.2 (citing *Kitaru Innovations, Inc. v. Chandaria*, 698 F. Supp. 2d 386, 389 (S.D.N.Y. 2010) ("In considering Defendant's motion to dismiss on . . . forum non conveniens grounds, this Court may consider affidavits, affirmations and exhibits submitted in connection with the motion.") (citation omitted)).

The Supreme Court has articulated that

> a plaintiff's choice of forum should rarely be disturbed.  However, when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' a court may, in the exercise of its sound discretion, dismiss the case.

*Piper Aircraft Co.*, 454 U.S. at 241 (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).  Thus, "[a]bsent proof that plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons, factors relating to convenience or expense generally weigh heavily in favor of the plaintiff's choice."  *Rahl*, 328 B.R. at 411–12.  But the plaintiff's choice of forum is not dispositive.

Here, the parties agree that Germany is an "adequate alternative forum" to try the case.  (*See* Motion at 10–11; Opp. at 6 (citing *JW Oilfield Equip., LLC v. Commerzbank AG*, 764 F. Supp. 2d 587, 598 (S.D.N.Y. 2011) (assuming Germany is an adequate alternative forum).)  *See also Airflow Catalyst Sys., Inc.*, 2011 WL 5326535, at *5 (concluding that Germany is an adequate alternative forum where plaintiff did not dispute the issue).

The Court's analysis then turns on whether Terpitz has met his burden in establishing that the *Gilbert* factors weigh "strongly" in favor of dismissing the case.  *See Wiwa*, 226 F.3d at 100.  The *Gilbert* factors fall within two categories:  (1) private interests of the litigants; and (2) public interests.  *Gilbert*, 330 U.S. at 508–09.

The private interest factors include:

1.  the relative ease of access to sources of proof;

2.  the availability of compulsory process for attendance of unwilling witnesses;

3.  the cost of obtaining attendance of willing witnesses;

4.  issues concerning the enforceability of a judgment; and

5.  all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Id*.  In assessing the private interest factors, "courts should examine the specifics of the claims: rather than simply characterizing the case as one in negligence, contract, or some other area of

law, the court should focus on the precise issues that are likely to be actually tried." *Airflow Catalyst Sys., Inc.*, 2011 WL 5326535, at *4. Here, Terpitz fails to establish that the five private interest factors weigh in favor of dismissing the case.

First, although the parties dispute the location of the relevant documents and necessary witnesses, factor one more strongly favors the Trustee since the Trustee's documents are located in the U.S., s*ee id.* at *7 ("[T]he Court finds that [the first two private interest factors] do not strongly favor Defendant, since Plaintiff's documents and witnesses are located here."), and there are similar and related adversary proceedings pending in this Court, *see Rahl*, 328 B.R. at 406 (related litigation is relevant to private interest factor one though not controlling on its own). To the extent documents for Terpitz's defense or otherwise are located outside of the U.S., "absent an explanation by [the defendant] as to 'how transporting the documents or copies of them would be "oppressive" or "vexatious,"' less weight should be accorded to factor one in determining whether the existing alternative forum is more appropriate." *Rahl*, 328 B.R. at 406 (citation omitted). Terpitz did not provide such an explanation thereby failing to demonstrate that factor one weighs in his favor.

Second, Terpitz argues under factor two that there are foreign witnesses necessary for his defense, who may be unwilling, but cannot be compelled, to testify in New York by this Court. (Motion at 12–13.) Terpitz argues that as a result, he would potentially be forced to rely solely on depositions in proving his defense, which has been held as insufficient. (*Id.* at 13 (citing *Gilbert*, 330 U.S. at 511 ("To fix the place of trial at a point where litigants cannot compel personal attendance of witnesses and may be forced to try their cases by deposition, is to create a condition not satisfactory to court, jury, or mots litigants."))). Although Terpitz may be correct about the Court's authority to compel the foreign witnesses to testify, factor two does not weigh

21

strongly in either party's favor.  Dismissing the New York case and forcing the Trustee to go to

Germany with his U.S.-based witnesses would be equally inconvenient.  *See Wiwa*, 226 F.3d at

107 ("The additional cost and inconvenience to the defendants of litigating in New York is fully

counterbalanced by the cost and inconvenience to the plaintiffs of requiring them to reinstitute

litigation in England.").  Terpitz also ignores this Court's prior holding that a partner in Dewey is

not entitled to a "fair consideration" defense to a New York Debtor and Creditor Law section

277 claim seeking to claw back partner distributions made under the DLPA.  *Jacobs v. Altorelli*

*(In re Dewey & LeBoeuf LLP)*, 518 B.R. 766, 778–84 (Bankr. S.D.N.Y. 2014).  Count IV of the

Complaint asserts a section 277 claim.  (Compl. ¶¶ 75–84.)  Consequently, Terpitz may not need

his foreign witnesses because he may not in fact have an affirmative defense to prove.

Third, Terpitz fails to establish that the cost of flying willing foreign witnesses to New

York to testify would be "prohibitive" such that factor three weighs in his favor.  (*See* Motion at

13.)  *See also Rahl*, 328 B.R. at 407 ("[I]n light of the realities of modern transportation and

communications . . . [a] forum is not necessarily inconvenient because of its distance from

pertinent parties or places if it is readily accessible in a few hours of air travel.").  Terpitz also

overlooks the fact that both parties have attorneys located in New York.  *See JW Oilfield Equip.,*

*LLC*, 764 F. Supp. 2d at 599 (concluding that "parties all hav[ing] attorneys based in New York"

to be relevant to private interest factors).

Fourth, Terpitz does not sufficiently establish that this Court's judgment would not be

enforceable in Germany.  (Motion at 14–15 (citing Wurmnest, 23 Berkeley J. Int'l Law at

189; *Airflow Catalyst Sys., Inc.*, 2011 WL 5326535, at *7 n.12).)  The very case on which

Terpitz relies holds that the mere argument that there is a "risk" or "possibility that a German

court might not enforce any judgment which this Court issues [is not] a strong showing that this

factor warrants dismissing the case." *Airflow Catalyst Sys., Inc.*, 2011 WL 5326535, at *7 &
n.12 (denying motion to dismiss on forum non conveniens grounds where defendant argued that
any judgment of the New York court may be unenforceable in Germany). At least one court has
held that the enforceability of this Court's judgment in Germany is not necessarily nil. *See Great
N. Ins. Co.*, 2007 WL 2891981, at *13.

Finally, the fifth factor regarding the practicalities of litigation in one forum over the
other weighs in favor of this Court. Although the Dewey bankruptcy and creation of the
Liquidating Trust in New York is irrelevant to the forum non conveniens analysis because the
bankruptcy is not presently at issue, *Rahl*, 328 B.R. at 408, "that discovery in this case can be
coordinated with discovery" in the other pending claw back proceedings *is* relevant, *id.* at 407,
412. Coordination of discovery "will reduce the potential for inconsistent adjudications and
allow for more efficient, non-duplicative discovery than would be possible if the [] litigations
were allowed to proceed in separate fora." *Id.*

On balance, Terpitz fails to satisfy his burden that the private interest factors weigh
strongly in his favor.

Turning to the public interests, these factors include:

1. the administrative difficulties flowing from court congestion;

2. the local interest in having controversies decided at home;

3. the interest in having a trial in a forum that is familiar with the law governing the
   action;

4. the avoidance of unnecessary problems in conflict of laws or in the application of
   foreign law; and

5. the unfairness of burdening citizens in an unrelated forum with jury duty.

*Gilbert*, 330 U.S. at 508–09. Terpitz again fails to meet his burden.

First, "it is well-established that the Southern District of New York has the resources to adjudicate complex litigation." *Rahl*, 328 B.R. at 408 (internal citation omitted). Terpitz's argument that this Court is too congested to handle this case is therefore unpersuasive. (*See* Motion at 14–15.) Although Terpitz asserts several administrative difficulties relating to the need for foreign witnesses and documents located abroad (*id.* at 13–16), these and similar arguments were already addressed under the private interest factors and do not appear to tilt the balance in favor of trying the case in Germany. The case would have the same administrative difficulties if it were tried in Germany due to the need for U.S.-based evidence and witnesses. *See Wiwa*, 226 F.3d at 107. Factor one does not weigh in Terpitz's favor.

Second, Terpitz did not adequately assert that there is a local interest in Germany favoring resolution of the case there. Terpitz merely asserts that other cases with similar causes of action brought by U.S. plaintiffs seeking damages have been dismissed in favor of forums abroad. (Motion at 16–17 (citing *In re Alcon Shareholder Litig.*, 719 F. Supp. 2d 263 (S.D.N.Y. 2010); *Sussman v. Bank of Israel*, 801 F. Supp. 1068 (S.D.N.Y. 1992); *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244 (S.D.N.Y. 2011)).) While these cases support the authority of this Court to dismiss damages actions on forum non conveniens grounds, they do not necessarily support the dismissal of the instant case. Here, New York has a greater local interest in seeing this case resolved because Terpitz was a partner in Dewey, a New York LLP (Valentine Decl. Ex. A; Terpitz Decl. Ex. A), who received payments that originated in Dewey's New York headquarters (Compl. ¶ 5), and who contacted individuals in the New York office to discuss such payments (Valentine Decl. Exs. A–C). That Dewey's bankruptcy proceeding and related litigation remain pending in this Court also weighs on the second public interest factor. Indeed, the real parties in

interest in this adversary proceeding are the creditors who filed proofs of claim in the bankruptcy case because the Trustee has brought this action on behalf of the Debtor's creditors pursuant to the powers conferred upon him by the Bankruptcy Code. *See* 11 U.S.C. § 544; *see also Piper Aircraft Co.*, 454 U.S. at 242 (concluding that where "[t]he real parties in interest were citizens" of the alternative forum, the public interest factors weighed in favor of trial in that forum).

Terpitz also fails to establish that the third, fourth, and fifth public interest factors weigh in his favor. The first two of these factors focus on the applicable law. Terpitz does not dispute the fact that U.S. bankruptcy law and New York state law apply to this action. This forum is therefore more familiar with the applicable law than the German forum and there is no conflict of law issue or the risk of having to apply foreign law in this Court. Consequently, there is no risk of burdening U.S. citizens with jury duty should Terpitz elect a jury trial because this Court is not an "unrelated forum."

Terpitz fails to demonstrate that the public interest factors weigh in his favor and further fails to meet his burden overall in proving forum non conveniens. Terpitz's Motion to dismiss on forum non conveniens grounds is **DENIED**.

### III.    CONCLUSION

For the reasons stated above, the Motion to dismiss the Complaint is **DENIED**.

**IT IS SO ORDERED.**

Dated:  December 22, 2014
         New York, New York


                         *Martin Glenn*
                         ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                         MARTIN GLENN
                         United States Bankruptcy Judge